## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| YUL CARTER, | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:05-0708** |
| | ) | |
| TODD R. CRAIG,[1] | ) | |
| Warden, FCI Beckley, | ) | |
| **Respondent.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On August 31, 2005, Petitioner, an inmate at FCI Beckley, Beaver, West Virginia, and acting

*pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* By a Person in

State or Federal Custody.[2] (Document No. 1.) Petitioner alleges that the Federal Bureau of Prisons

[BOP] improperly calculated his term of imprisonment. (Id.) By Standing Order, this matter was

referred to the undersigned United States Magistrate Judge for the submission of proposed findings

of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No.

2.)

### PROCEDURE AND FACTS

On October 16, 1989, Petitioner was arrested by the Charleston Police Department in

Charleston, West Virginia, on the charges of destruction of property, transferring and receiving

---

[1]  When Petitioner filed this civil action, Charles T. Felts was serving as the Warden of FCI
Beckley. Todd R. Craig, however, has since been designated as the Warden. Accordingly, pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Todd R. Craig is substituted as the party
Respondent in this civil action.

[2]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held
to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

stolen property and malicious wounding. (Document No. 1, p. 15.) Petitioner's bail was set at $10,500 surety. On October 26, 1989, a preliminary hearing was conducted and the charges of destruction of property and transferring and receiving stolen property were dismissed and Petitioner's bail was reduced to $1,000 surety. Petitioner posted bail and was released. (Id., p. 16.) On February 11, 1990, Petitioner was arrested by officers of the Charleston, West Virginia Police Department and charged with First Degree Arson. (Document No. 13, Declaration of Cheryl A. Pauley, p. 2.) Agents of the Bureau of Alcohol, Tobacco, and Firearms [ATF] assisted with the arrest. (Id.) Petitioner was arraigned on his malicious wounding charge on February 21, 1990, in the Circuit Court of Kanawha County. (Document No. 1, pp. 20-21.) On March 13, 1990, Petitioner was charged by Indictment in this District Court with violating 18 U.S.C. §§ 844 and 924(c). (Document No. 13, Declaration of Cheryl A. Pauley, p. 2.) Petitioner was arraigned upon the federal charges on March 29, 1990. (Id.) A detention hearing was held before a United States Magistrate Judge on April 2, 1990, and Petitioner was ordered detained and remanded back to State custody. (Id.) On May 4, 1990, the Circuit of Kanawha County granted Petitioner's Motion to Continue his State case pending the conclusion of Petitioner's federal prosecution. (Document No. 1, pp. 22-25.) Petitioner appeared in the District Court for trial from May 29 through June 8, 1990, and was convicted of all six counts contained in the Indictment. (Document No. 13, Declaration of Cheryl A. Pauley, p. 5.) On July 30, 1990, Petitioner pled guilty to the lesser included offense of battery in the Circuit Court of Kanawha County. (Document No. 1, p. 26-29.) The District Court sentenced Petitioner on August 15, 1990, to a total term of 26 years in prison to be followed by a 3 year term of supervised release. (Document No. 13, Declaration of Cheryl A. Pauley, p. 5.) On August 16, 1990, the Circuit Court of Kanawha County sentenced Petitioner to a 6 month term of imprisonment to be served

2

concurrently with his federal sentence.[3] (Document No. 1, pp. 28-31.) The Circuit Court awarded Petitioner credit for time spent in custody prior to sentencing. (Id.) Petitioner's federal sentence is deemed to have commenced on August 15, 1990, the date the sentence was imposed.[4] Petitioner's projected release date is April 8, 2013. (Document No. 13, Declaration of Cheryl A. Pauley, pp. 15-18.)

On November 15, 2004, Petitioner submitted a Request for Administrative Remedy (Remedy No. 357770-F2) to the Warden of FCI Beckley seeking prior custody credit from February 11, 1990, through September 25, 1990. (Document No. 1, pp. 32-33.) The Warden denied Petitioner's request on December 14, 2004. (Id., p. 34.) On January 4, 2005, Petitioner appealed to the Regional Director of the Bureau of Prisons, Mid-Atlantic Region (Remedy No. 357770-R1). (Id., pp. 37-38.) The Regional Director denied Petitioner's appeal on February 4, 2005. (Id., p. 39.) On February 16, 2005, Petitioner appealed the denial to the Central Office  (Remedy No. 357770-A1). (Id., p. 40.) Petitioner contends that  the Central Office failed to timely respond to his appeal.[5] (Id., p. 41.)

On August 31, 2005, Petitioner filed his instant Application under 28 U.S.C. § 2241, in which he challenges the BOP's computation of his sentence and his receipt of prior custody credit. (Document No. 1.) Petitioner contends that he is entitled to credit for time spent in custody beginning on February 11, 1990, the date on which he alleges to have been arrested by federal

---

[3]  By Order dated November 11, 1999, the Circuit Court of Kanawha County corrected its Sentencing Order stating that Petitioner's sentence was to be served concurrently with any sentence imposed by the United States government. (Document No. 1, pp. 30-31.)

[4]  Respondent states that Petitioner has been granted one day of prior custody credit for August 14, 1990, as this was time spent in custody that was not credited against his State sentence.

[5]  Respondent concedes that Petitioner properly exhausted his administrative remedies prior to the commencement of this action. (Document No. 13, p. 2.)

authorities, and ending on August 14, 1990, when the BOP began computation of his federal sentence. (<u>Id.</u>, p. 15.) Petitioner contends he is entitled to the above credit pursuant to 18 U.S.C. § 3585(b). In support of his claim for prior custody credit, Petitioner states that "on February 11, 1990, when Petitioner was arrested by federal agents for violation of Title 18 U.S.C. § 844, the United States acquired exclusive primary jurisdiction." (<u>Id.</u>, p. 9.) Petitioner further contends that he must be granted credit for the above time because the Circuit Court of Kanawha County ordered Petitioner's State sentence to run concurrently with his federal sentence. (<u>Id.</u>, p. 12.)

By Order entered on January 31, 2008, the undersigned directed Respondent to show cause, if any, why Petitioner's Petition for Writ of Habeas Corpus should not be granted. (Document No. 10.) On February 22, 2008, Respondent filed a Response to the Order to Show Cause, urging the Court to dismiss Petitioner's Application. (Document No. 13.) Respondent states that Petitioner's federal sentence was deemed to have commenced on August 14, 1990, when Petitioner's six month State sentence expired and the State relinquished its primary jurisdiction . (<u>Id.</u>, p. 5.) Respondent contends that the State of West Virginia had primary jurisdiction over Petitioner because State authorities arrested and detained Petitioner on February 11, 1990. (<u>Id.</u>, p. 4.) Specifically, Respondent asserts that Petitioner was arrested on February 11, 1990, by officers of the Charleston, West Virginia Police Department with the assistance of ATF agents. (<u>Id.</u>, p. 5.) Respondent argues that Petitioner received credit against his State sentence for the above time period and is not entitled to double credit. (<u>Id.</u>, p. 6.) Finally, Respondent claims that Petitioner's federal sentence must run consecutive because the District Court was silent as to whether the federal sentence was to run concurrent or consecutive to any State sentence yet to be imposed. (<u>Id.</u>, p. 7.)

4

On March 17, 2008, Petitioner filed a "Traverse Brief" objecting to the Respondent's Response. (Document No. 14.) Petitioner argues that he was arrested by ATF agents, not State authorities, on February 11, 1990. (Id., p. 3.) Specifically, Petitioner states that he "has remained in federal custody, and only federal custody, since his arrest by agents of the ATF on February 11, 1990. (Id., p. 7.) Petitioner claims that he "was never incarcerated by local, city, county or state law enforcement." (Id., p. 4.) Therefore, Petitioner contends that the United States had primary jurisdiction beginning on February 11, 1990, and he is entitled to credit for this period of time. Finally, Petitioner again points out that the Circuit Court of Kanawha County ordered his State sentence to run concurrently with any federal sentence. (Id. p. 8.)

## ANALYSIS

Essentially, Petitioner alleges that his federal sentence should have commenced on February 11, 1990, the date of his arrest. 18 U.S.C. § 3585(a) provides that a federal sentence does not begin to run until the United States Attorney General receives the defendant into custody for service of the sentence.[6] See Thomas v. Whalen, 962 F.2d 358, 364 (4th Cir. 1992)(holding that 18 U.S.C. § 3568 (*repealed*), the predecessor to § 3585(a), "dictates that federal sentences commence on the date the prisoner is received at the penitentiary for  the service of his sentence.") When a federal court imposes sentence upon a defendant already in State custody, as occurred in Petitioner's case, the principles of comity and primary jurisdiction dictate that the federal sentence does not commence

---

[6] Section 3585(a) states:

**Commencement of sentence**. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

until the State relinquishes its jurisdiction. See United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980). Under such circumstances, the State retains primary custody over the defendant until its jurisdiction ends in some fashion, e.g., expiration of the State sentence, bond or parole release, reversal of conviction, etc. See United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). "The concept of primary jurisdiction refers to 'the priority of service regarding a defendant's contemporaneous obligations to multiple sovereigns, whereby a defendant will fulfill his obligations to the sovereign with primary jurisdiction over him before any others.' " Trowell v. Beeler, 2005 WL 1181858, *2 n.2 (4th Cir. (N.C.) May 19, 2005)(quoting Savvas Diacosavvas, Note, Vertical Conflicts in Sentencing Practices: Custody, Credit, and Concurrency, 57 N.Y.U. Ann. Surv. Am. L. 207, 210 (2000).) Generally, the first arresting sovereign acquires primary jurisdiction "for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign." United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980).

Primary jurisdiction is not relinquished, however, when a defendant is borrowed pursuant to a writ of *habeas corpus ad prosequendum*. See Evans, 159 F.3d at 912. This is because "the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities... . Principles of comity require that when the writ of habeas corpus *ad prosequendum* is satisfied, the receiving sovereign return the prisoner to the sending sovereign." Id. The time the defendant appears for prosecution of federal charges pursuant to an *ad prosequendum* writ is credited, therefore, against the defendant's State sentence, not his federal sentence. Id.; See also Beard v. Bureau of Prisons, 133 F.3d 913, 1998 WL 25047 (C.A.4(Md.))("A defendant may not receive credit against his federal sentence for time spent in state custody prior to the date the federal sentence commences

if that time has been credited against another sentence."); <u>Taylor v. United States</u>, 2005 WL 2807190(E.D.Ky.).

Applying these principles to Petitioner's case, the undersigned finds that the State of West Virginia acquired primary jurisdiction over Petitioner on February 11, 1990, when State authorities arrested him, and the State did not relinquish jurisdiction until August 13, 1990, when Petitioner's six month State sentence expired.[7] Although Petitioner alleges that he was not under the State's primary jurisdiction because he was arrested by ATF agents, the evidence of record does not support such a conclusion. Petitioner's FBI Criminal History Records reveal that he was arrested on February 11, 1990, by officers of the Charleston, West Virginia Police Department. (Document No. 13, Declaration of Cheryl A. Pauley, pp. 2 and 11.) The undersigned notes that even though Petitioner's Pre-Sentence Report indicates that he was arrested on February 11, 1990, by ATF agents, the report also states that "[t]he defendant was remanded back to the custody of the state where he was awaiting trial on a charge of malicious wounding." (Document No. 1, p. 18.)  Thus, the State retained primary jurisdiction until August 13, 1990, when Petitioner's six month State sentence expired. Pursuant to 18 U.S.C. § 3585(a), Petitioner's federal sentence therefore, commenced on August 14, 1990.

Even though Petitioner's State sentence was ordered to run concurrent with any federal sentence, the fact remains that the District Court did not order Petitioner's sentence to run concurrent with the State sentence. 18 U.S.C. § 3584(a) provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run

---

[7] While he was in State custody, Petitioner appeared in federal Court for his arraignment, detention hearing and trial. The days when Petitioner did so were credited against his State sentence and are therefore not properly counted against his federal sentence.

7

concurrently." The District Court was silent as to whether Petitioner's federal sentence was to run concurrently or consecutively to any State sentences and therefore, in accordance with § 3584(a), the sentence runs consecutive to the State sentence. See United States v. Saunders, 1998 WL 539482 (4th Cir. (N.C.) Aug. 25, 1998), cert. denied, 526 U.S. 1011, 119 S.Ct. 1157, 143 L.Ed.2d 222 (1999). Accordingly, Petitioner has neither demonstrated that the BOP improperly calculated the date on which his federal sentence commenced, nor that he was improperly denied a *nunc pro tunc* designation.[8]

---

[8] Title 18, U.S.C. § 3621(b) grants the BOP broad discretionary authority to determine the location in which a defendant will serve his term of imprisonment. Section 3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, . . .. The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another. . . .

18 U.S.C. § 3621(b). "When a federal court imposes a sentence on a defendant who is already in State custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." *Evans*, 159 F.3d at 911-12. A *nunc pro tunc* designation request must be considered by the BOP, but is not mandated. *See Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990).

The *Barden* Court explained a *nunc pro tunc* designation as follows:

> The Latin phrase *nunc pro tunc* describes a doctrine that permits acts to be done after the time they should have been done with a retroactive effect - - a Latin term meaning literally, "now for then." An act *nunc pro tunc* is an "entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake." *Black's Law Dictionary* at 964 (5th ed. 1979).

*Barden*, 921 F.2d at 477-78, n.2.

Furthermore, the undersigned finds that Petitioner is not entitled to additional credit against his federal sentence. 18 U.S.C. § 3585(b) provides as follows:

> **Credit for prior custody.** – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> > **(1)** as a result of the offense for which the sentence was imposed; or
> >
> > **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

The Court finds that Petitioner properly received custody credit against his State sentence for the time period beginning February 11, 1990, and ending August 13, 1990, and therefore, is not entitled to additional credit for this time period. See United States v. Wilson, 503 U.S. 329, 337, 112 S.Ct.1351, 1355-56, 117 F.3d 593 (1992)(Because a defendant serving a State sentence is not in custody solely pursuant to federal charges, "Congress made clear [in 18 U.S.C. § 3585(b)] that a defendant could not receive a double credit."). Petitioner also received prior custody credit for August 14, 1990, when his State sentence expired and he was released to the custody of the United States Marshal. Accordingly, the undersigned finds that Petitioner is not entitled to *habeas* relief and his Petition should be dismissed.

### PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Petitioner's Application (Document No. 1.) with prejudice and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner, who is acting *pro se*.

Date: April 2, 2008.

R. Clarke VanDervort
United States Magistrate Judge